**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MARGARET MAULDIN, 241 Detmar Dr., Winter Park, FL 32789, and CHARAFEDDINE ZAITOUN, 521 21st Street, NW, Washington, DC 20006, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>BOARD OF TRUSTEES OF THE GEORGE WASHINGTON UNIVERSITY, 825 21st Street, NW, Washington, DC 20006<br><br>Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Margaret Mauldin and Charafeddine Zaitoun ("Plaintiffs"), individually and on behalf of all others similarly situated (collectively, the "Class" as defined below), bring this class action complaint against the Board of Trustees of George Washington University ("GW" or "Defendant").

## NATURE OF THE ACTION

1. This is a class action brought to compensate similarly situated George Washington University ("GW") students and/or their parents or guardians who paid tuition and fees for the Spring 2020 academic and later terms and who (i) did not receive their bargained-for educational and other services and (ii) have not been refunded a prorated portion of their tuition and fees after GW ceased providing such services to students during the Spring 2020 academic semester due to Coronavirus Disease 2019 ("COVID-19").

2. Specifically, as a result of Defendant's wrongful acts and unfair business practices alleged herein, Plaintiff and the proposed Class (i) have not received any refund or

reimbursement for the unused services for which they paid; and/or (ii) did not receive any refund or reimbursement for the decreased value of the education they received from GW when their classes transitioned from in-person instruction at the GW campus facilities to an entirely remote, online learning format.

3.  With two campuses in Washington, DC and an additional campus in Ashburn, Virginia, GW is one of the nation's premier private universities.  GW currently enrolls more than 12,500 undergraduate and more than 15,600 graduate students, and, altogether, serves a total of more than 28,100 students.

4.  As of 2019, GW had a $1.8 billion endowment, and was recently recognized as one of the 60 richest universities in the country.[1] GW reported having more than $4.5 billion in assets in 2019.[2] A sizable portion of GW's assets comes from the tuition and fees that its students pay. In 2019, GW collected $774 million in student tuition and fees.

5.  For the 2020-2021 academic year, the estimated annual GW undergraduate tuition will be $58,500.  For graduate students, estimated annual tuition for the 2020-2021 academic year will be $32,850.

6.  In response to COVID-19, on March 10, 2020, GW President Thomas J. LeBlanc announced that following Spring Break, all on-campus classes were being shifted online until April 5, 2020. LeBlanc also announced that all student organization activities and events were suspended.

7.  On March 16, 2020, President LeBlanc announced the virtual learning would be

---

[1] https://thebestschools.org/features/richest-universities-endowments-generosity-research/ (last visited May 20, 2020).
[2] https://finance.gwu.edu/sites/g/files/zaxdzs1306/f/downloads/EVPT_FinancialReport2018-19.pdf (last visited May 20, 2020).

extended through the end of the Spring semester. All on-campus events were cancelled.

8. GW recognized that moving classes online presented problems. As a result, students were offered a pass/no pass option instead of letter grades for most courses. In addition, on March 23, 2020, President LeBlanc acknowledged that "the interruptions to our students' daily lives and the uncertainty the pandemic has caused have been unprecedented." Despite this, President LeBlanc provided no guidance or offers to reimburse any portion of students' tuition or fees.

9. Despite the provision of an entirely remote college and graduate studies experience, Defendant refuses to refund or reimburse Plaintiffs and similarly situated GW students and their parents or guardians the fees they paid for services they are not being provided, events they cannot attend, and programs and activities that have been curtailed, discontinued, or closed.

10. Defendant also refuses to refund or reimburse Plaintiffs and the Class for tuition paid for online classes that Defendant is currently providing to them that are substantially less valuable than the in-person classes that Defendant had advertised and promised. This is true in spite of the fact that GW has recognized the lesser value of online-only courses by offering online courses at much lower rates that courses offered on campus.[3]

11. Plaintiffs and other Class members have lost the benefits of the education, services, and other experiences that Defendant promised.  Despite failing to fulfill its obligations, Defendant is currently unlawfully retaining and refusing to fully or partially refund Plaintiffs' Spring 2020 semester tuition and fees, despite the dramatically lower quality and less valuable

---

[3] https://www.gwhatchet.com/2020/05/11/if-fall-classes-go-online-gw-should-explore-ways-to-cut-tuition/ (site last visited May 20, 2020).

education and services now being provided.

12. Essentially, students have paid Defendant for high-quality, in-person instruction that is no longer available to them, access to buildings they can no longer enter, technology, programs and services that Defendant is no longer providing, and activities that are no longer available. Defendant is thus profiting from COVID-19 while further burdening students and their families—many of whom have been laid off, become ill, lost loved ones, or are otherwise already bearing the brunt of the COVID-19 pandemic. The result is an enormous windfall to Defendant. Both contract and equity demand that Defendant disgorge its ill-gotten funds.

13. Plaintiffs and similarly situated GW students and their parents or guardians are entitled to have Defendant disgorge fees they paid for unused services and to refund their tuition for substandard classes. Plaintiffs bring this class action for injunctive, declaratory, and equitable relief, and any other available remedies, resulting from Defendant's illegal, inequitable, and unfair retention of the funds paid by Plaintiffs and the other students and their parents or guardians in the proposed Class.

14. Specifically, this lawsuit seeks disgorgement and monetary damages in the amount of prorated, unused amounts of tuition and fees that Plaintiffs and the other Class members paid, the benefits of which will not be provided by Defendant. This includes the difference in value between the live in-person classes for the Spring 2020 semester and later terms for which students enrolled and paid, compared to the lesser online versions of classes that Defendant has been providing to them since mid-March 2020.

## PARTIES

### A. Plaintiffs

15. Plaintiff Margaret Mauldin is a resident of Florida with an address at 241 Detmar Drive, Winter Park, FL 32789. She is a graduate student currently in her first year at GW and is expected to receive her Master's degree in Museum Studies in May 2021.

16. Plaintiff Charafeddine Zaitoun is a resident of Washington, DC with an address at 522 21st Street, NW, Washington, DC 20006. He is an undergraduate student in his fourth year at GW and is expected to receive his Bachelor's degree in Real Estate in August 2020.

### B. Defendant

17. GW University, located in Washington, DC, was chartered in 1821 as a private research university. The Board of Trustees, located at 825 21st Street, NW, Washington, DC 20006, is the governing body of GW, providing oversight of and having fiduciary responsibility for GW's academic, fiscal, and physical operations.[4] Defendant thus provides Plaintiffs Mauldin and Zaitoun and members of the Class with campus facilities, in-person classes, as well as a variety of other facilities, services, and programs at GW and for which Defendant charged Plaintiffs and members of the Class.

## JURISDICTION AND VENUE

18. This Court has original jurisdiction under 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5,000,000, exclusive of interests and costs, and because at least one member of the Class defined below is a citizen of a state other than the District of Columbia.

19. This Court has personal jurisdiction over Defendant because Defendant maintains

---

[4] https://trustees.gwu.edu/ (site last visited May 20, 2020).

its principal place of business in this judicial District.

20. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), because Defendant resides in this District and a substantial part of the acts or omissions giving rise to this Complaint occurred in this District.

## FACTUAL ALLEGATIONS

21. GW is one of the nation's most prestigious universities, offering more than 75 programs of study across its 14 undergraduate and graduate schools, GW also offers master's and doctoral degrees in more than 240 graduate programs of study.

22. In the 2020 edition of U.S. News & World Report's Best Colleges, GW was ranked as the seventieth "Best National University."

23. GW is also among the nation's most expensive private secondary educations, and estimates that for the 2020-2021 academic year, the total cost of undergraduate attendance is $77,701,[5] an amount which exceeds the median household income in the United States. The cost of graduate attendance varies by program but is estimated to be $63,875 including personal and living expenses.[6]

24. Defendant markets GW and justifies its high costs by touting the vitality of its campus, noting that its main campus at Foggy Bottom "combines the academic and residential amenities of a top notch university with the excitement and convenience of living in the heart of the city. From lecture halls to high tech labs, and small group meeting rooms to open study spaces, you'll find a wide range of learning environments to fit your needs and aspirations."[7]

---

[5] https://financialaid.gwu.edu/cost-of-attendance (site last visited May 20, 2020).
[6] *Id.*
[7] https://www.gwu.edu/foggy-bottom-campus (site last visited May 20, 2020).

25. In highlighting its undergraduate programs, GW states:

> When you study at GW, your experience will be anything but typical. You might learn from Pulitzer Prize-winners, run into world leaders on campus or be challenged by the first lady to serve our community. But the real difference at GW is that as a student you'll immediately put what you learn into action. From the center of Washington, D.C., you'll be able to explore hundreds of internship opportunities (in your field alone), take part in groundbreaking research that changes lives, join a student organization and volunteer with fellow Colonials in the city or around the world. If you come to GW, you won't just live in D.C. — you'll become a part of the nation's capital and make a difference in it every day.[8]

26. GW also highlights its campus life by stating: "During your time at GW, you'll likely find fellow Colonials who share your interests. Whether it's leadership, politics, arts and culture, athletics or service that moves you, GW students engage in more than 450 clubs and student organizations on campus. Pursuing your passions and sharing your diversity plays an integral role in building our community."[9]

27. Similarly, the Graduate School at GW also touts on-campus connections between students and faculty:

> Whether you want to advance your current career or start on a fresh path, we're confident you will find what you're looking for at GW. With more than 240 graduate programs in our schools and colleges, there's a program here that will fit your interests and lifestyle. If you want to work in labs with researchers who are changing the world or take a metro ride to class after work to study with world-renowned faculty, GW offers the variety and flexibility to meet your needs. With our graduate education, the relationships you build with your fellow students and faculty members will become a network of Colonials you'll carry with you.[10]

28. Because of the high-quality, hands-on, and proven academic opportunities that it advertises, and on-campus experiences and services it guarantees, Defendant has charged substantial tuition and fees for a GW education.

---

[8] https://www.gwu.edu/undergraduate-admissions (site last visited May 20, 2020).
[9] https://www.gwu.edu/campus-life (site last visited May 20, 2020).
[10] https://www.gwu.edu/graduate-admissions (site last visited May 20, 2020).

29. For example, after Plaintiff Mauldin registered for graduate courses for the Spring 2020 semester and Defendant accepted her registration, Defendant charged Plaintiff Mauldin $14,895 in tuition, as well as a $27 Student Association Fee. After receiving an endowment scholarship, Plaintiff Mauldin paid $9,922 for her tuition and fees for the Spring 2020 semester.

30. Mauldin selected GW for her graduate studies because of the networking and collaboration with professors and professionals offered through the GW program, including field trips to local museums and peer-reviewed classes. She also paid for tuition credits for an internship at the Smithsonian Museum, but is unable to participate other than remotely. Mauldin agreed to pay the high cost of GW's graduate tuition because the program offered access to these and other opportunities that were based on in-person classes and study. She is not receiving what she bargained for.

31. Similarly, after Plaintiff Zaitoun registered for his undergraduate courses for the Spring 2020 semester and Defendant accepted his registration, Defendant charged Plaintiff Zaitoun $26,717.50 in tuition, as well as $96.25 in fees.

32. Plaintiff Zaitoun will be taking two courses during the Summer 2020 session at GW. Because all Summer classes have also been moved online, Plaintiff Zaitoun has been charged more than $10,000 in tuition and fees for Zoom classes with no access to professors, other classmates, or campus facilities or resources.

33. In addition, Plaintiff Zaitoun is paying $1,650 per month to rent an apartment near GW's campus, despite the fact that he no longer can attend classes on campus or use facilities on campus.

34. Plaintiffs have not attended any in-person classes since Spring Break began on March 16, 2020. Instead, since classes resumed on March 23, 2020, all of their classes have

been administered online.

35. Plaintiffs have neither received nor been offered any refund or reimbursement for the in-person tuition or fees that they paid for the Spring 2020 semester at GW.

36. Defendant has acknowledged that it can only offer "instructional continuity" during this "particularly stressful time" and that students should have pass/no pass grade options because "the interruptions to our students' daily lives and the uncertainty the pandemic has cause have been unprecedented."

37. The hasty conversion to "virtual learning" has not and cannot compare to live classes. But it doesn't compare to well-planned and executed online courses either. As one in-depth article noted, "Well-planned online learning experiences are meaningfully different from courses offered online in response to a crisis or disaster."[11] GW's offerings are not – and cannot be, under the circumstances – "well-planned online learning experiences." Instead, GW professors have been given instructional videos for "Online Teaching in 10 Minutes."[12]

38. The result of this approach is that Plaintiff and Class members have been provided with a second-rate online substitute for the hands-on, in-person coursework in which they enrolled—and for which they paid. As further noted in the above-referenced article:

> Typical planning, preparation, and development time for a fully online university course is **six to nine months before the course is delivered**. Faculty are usually more comfortable teaching online by the second or third iteration of their online courses. **It will be impossible for every faculty member to suddenly become an expert in online teaching and learning in this current situation**, in which lead times range from a single day to a few weeks. While there are resources to which faculty can turn for assistance, the scale of change currently being required on many campuses will stress the systems that provide those resources and most likely will surpass their

---

[11] https://er.educause.edu/articles/2020/3/the-difference-between-emergency-remote-teaching-and-online-learning (site last visited May 20, 2020).
[12] https://campusadvisories.gwu.edu/resources-covid-19-virtual-learning-period (site last visited May 20, 2020).

capacities. **Let's face it: many of the online learning experiences that instructors will be able to offer their students will not be fully featured or necessarily well planned, and there's a high probability for suboptimal implementation**. We need to recognize that everyone will be doing the best they can, trying to take just the essentials with them as they make a mad dash during the emergency. Thus, **the distinction is important between the normal, everyday type of effective online instruction and that which we are doing in a hurry with bare minimum resources and scant time: emergency remote teaching.**[13]

39. Yet despite providing students with only emergency and unplanned educational experiences that are vastly different from what Plaintiffs and Class members paid for, to date GW has refused to provide students with prorated reimbursements of tuition and fees. In fact, GW's Frequently Asked Questions (FAQ) page on its website claims that "As we continue to deliver quality education, the tuition charged remains the same regardless of format."[14] In effect, Defendant has placed the entire financial burden of its emergency remote teaching program onto Plaintiffs and the Class.

40. Even where well-planned online courses are offered, they general cost less that live, in-person classes. This is true at GW, which "already offers a discount on its regular online course offerings – for the 2019–2020 academic year, the cost for some of these classes hovers at around $600 per credit, a far cry from the per-credit cost for undergraduates of $1,675. This discount reflects the fact that the quality of instruction is different between online and in-person instruction."[15]

41. As a result of the closure of GW, Defendant has not delivered the educational services, facilities, programs, and opportunities for which Plaintiffs and the Class contracted and

---

[13] https://er.educause.edu/articles/2020/3/the-difference-between-emergency-remote-teaching-and-online-learning (emphasis added) (site last visited May 20, 2020).
[14] https://financialaid.GW.edu/coronavirus (site last visited May 13, 2020).
[15] https://www.gwhatchet.com/2020/05/11/if-fall-classes-go-online-gw-should-explore-ways-to-cut-tuition/ (site last visited May 20, 2020).

paid. "[S]tudents have had to shoulder GW's high tuition cost for an unanticipated period of lower-quality instruction."[16] Plaintiffs and the proposed Class are therefore entitled to a full refund of the portion of the fees and tuition for the latter half of the Spring 2020 semester that Defendant did not provide, or which it provided in a severely diminished manner.

42. The remote, online learning "classes" offered to Spring 2020 students since March deprive students of in-person learning from their peers and school faculty. The move to these remote classes also deprives students of access to the facilities, materials, and opportunities only offered on GW's physical (as opposed to virtual) campus, including laboratory and research experience, use of on campus facilities (*e.g.*, the gym and libraries), and use of on campus services and events (*e.g.*, attending sporting events, end-of-year programs and events, and various student services).

43. The online classes Plaintiffs and their peers have been provided are not equivalent to, and are worse than, the in-person, campus experience that Plaintiffs and other GW students chose for their university education. The tuition and fees that Defendant charged were predicated on access to and constant interaction with and feedback from peers, mentors, professors, and guest lecturers; access to technology, libraries, and laboratories; opportunities to attend or participate in spectator sports and athletic programs; access to student government and health services; and participation in extracurricular groups and learning, among other things.

44. The online classes offered to Plaintiffs and their peers are also of substantially lower quality and are objectively worth less than the in-person courses for which they enrolled and paid.

45. GW's post-COVID-19 online student offerings do not even come close to

---

[16] *Id.*

11

comparing with either GW's in-person course experiences. Instead, Plaintiffs and Class members have been forced into overpriced bubble-gum-and-duct-tape substitutes. Yet, despite offering students inferior, poorly planned, and poorly executed online courses, Defendant refuses to issue refunds to Plaintiffs and thousands of other students.

46. Moreover, Defendant has refused to issue refunds for mandatory fees, as well. Since the campus shut-down, Plaintiffs and the Class have not received the benefits of these fees and have not been offered a refund for them.

47. Through this lawsuit, Plaintiffs seek—for themselves and the other Class members—Defendant's disgorgement and/or refund of the prorated, unused portion of their fees, proportionate to the amount of time that remained in the Spring 2020 semester when the campus was shut down and classes moved online, as well as a refund of a percentage of tuition based on students no longer being able to attend classes in-person and instead being offered a sub-par online learning experience.

## CLASS ACTION ALLEGATIONS

48. Pursuant to Fed. R. Civ. P. 23(a), (b)(2), (b)(3), and/or (c)(4), Plaintiffs bring this action on behalf of themselves and the following Class:

> All persons who paid tuition, fees, and/or other costs to George Washington University for (1) in-person classes for the Spring 2020 semester or a subsequent term and (2) who did not receive the benefits for which they paid.

49. The following persons and entities are excluded from the Class: Defendant and its officers, directors, employees, subsidiaries, and affiliates; all judges assigned to this case and any members of their immediate families; and the parties' counsel in this litigation. Plaintiffs reserve the right to modify, change, or expand the class definition, including by proposing additional subclasses, based upon discovery and further investigation.

50. A class action is a superior means to ensure the fair and efficient adjudication of

this case.  The damages suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of the claims described herein against the Defendant.  Moreover, individualized actions would run the risk of creating inconsistent or contradictory judgments arising from the same set of facts and would increase the likely delay and expense to all parties involved and the Court itself.  By contrast, by proceeding as a class action, the claims at issue can be adjudicated efficiently through economies of scale.

51. **Numerosity.**  In accordance with Fed. R. Civ. P. 23(a)(1), the members the proposed Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.  Although the precise number of Class members is unknown presently to Plaintiffs, the Class is presumed to number more than 28,000 people and is easily ascertainable through enrollment and financial records maintained by Defendants.

52. **Commonality and Predominance.**  In accordance with Fed. R. Civ. P 23(a)(1) and (b)(3), this action involves questions of law and fact common to the Class that predominate over any individual questions specific to any Class member. These include:

   a. whether Defendant accepted money from the Class;

   b. whether Defendant retained money from the Class for services they did not render, or only partially rendered;

   c. whether Defendant entered into a contract with the Class;

   d. whether Defendant breached its contract with the Class;

   e. whether Defendant benefited from the money it accepted from the Class;

   f. whether the educational and other services Defendant provided to the Class were commensurate with the value;

   g. whether certification of the Class is appropriate under Fed. R. Civ. P. 23;

   h. whether Class members are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and

      i. the amount and nature of relief to be awarded to Plaintiff and the other Class members.

53. **Typicality.** Pursuant to Fed. R. Civ. P. 23(a)(3), Plaintiffs' claims are typical of the other Class members' claims because Plaintiffs and the other Class members each paid for certain costs associated with the Spring 2020 semester but were not provided the services that those costs were meant to cover. Each suffered damages in the form of their lost tuition, fees, and other monies paid to Defendant, and the claims all arise from the same GW practices and course of conduct. There are no defenses available that are unique to the Plaintiffs.

54. **Adequacy of Representation.** In accordance with Fed. R. Civ. P 23(a)(4), Plaintiffs are adequate Class representative because their interests do not conflict with the interests of the other proposed Class members. Moreover, Plaintiffs have retained counsel competent and experienced in complex class action litigation, and they intend to prosecute this action vigorously on behalf of their fellow Class members. Plaintiffs have no interests that are antagonistic to those of the Class and they will fairly and adequately protect the proposed Class' rights along with counsel.

## COUNT I

### Breach of Contract

55. Plaintiffs repeat and allege the allegations in Paragraphs 1-54, above, as if fully alleged herein.

56. Plaintiffs brings this claim individually and on behalf of the other members of the Class.

57. Plaintiffs and the other members of the Class entered into binding contracts with Defendant, which provided that Plaintiff and the other members of the Class would pay tuition and fees, to GW, in exchange for on-campus educational, social, and other experiences and

access to facilities.

58.     As part of their contracts with GW, and, in exchange for adequate consideration that Plaintiffs and members of the proposed Class provided, Defendant promised to provide educational and campus services and a meal plan during the Spring 2020 semester.

59.     Defendant failed to provide the services that it was obligated to perform under its contracts with Plaintiffs and the proposed Class.  Defendant has retained tuition and fees paid by Plaintiffs and the other members of the Class for the full 2020 Spring semester without providing them the promised benefits, instead providing those benefits for only a portion of the 2020 Spring semester.

60.     By contrast, Plaintiffs and the other members of the Class fulfilled their end of the bargain when they paid the monies due and owing for their full tuition and fees for the semester.

61.     The tuition and fees that Plaintiffs and the proposed Class paid were intended to cover in-person educational and extra-curricular services from January through May 2020. Defendant, however, failed to provide the services due under the contracts for that entire time period, yet has improperly retained the funds Plaintiffs and the proposed Class paid for their Spring 2020 tuition and fees without providing them the services and other benefits due under the contracts.

62.     Plaintiffs and members of the Class have suffered damages as a direct and proximate result of Defendants' breach, including being deprived of the education, experience, and services that they were promised and expected to obtain, and for which they have paid. They are entitled to damages including but not limited to prorated reimbursement of the tuition, fees, and other expenses that were collected by Defendant for services that Defendant failed to deliver fully.

63. Defendant's performance under the contracts is not excused because of COVID-19. Even if performance was excused or impossible, Defendant would nevertheless be required to return the funds received for services and/or goods that it did not provide.

## COUNT II

### Unjust Enrichment

64. Plaintiffs repeat and reallege the allegations in Paragraphs 1-63, above, as if fully alleged herein.

65. Plaintiffs brings this claim individually and on behalf of the other members of the Class in the alternative to the breach of contract claim brought in Count I.

66. Plaintiffs and other members of the proposed Class conferred a benefit or enrichment on Defendant by paying tuition and mandatory fees to Defendant which were beneficial to Defendant, at the expense of Plaintiffs and the other members of the Class.

67. Plaintiffs and the other members of the Class paid tuition and mandatory fees and did not receive the full benefit of their bargain from Defendant, thus resulting in their impoverishment.

68. Defendant has retained the benefit paid by Plaintiffs and the Class despite its failure to provide the services for which the benefit was paid.

69. There is no justification or cause for Defendant's failure to return the portion of the tuition and fees that Defendant has unjustifiably kept for itself even though it failed to complete the services for which Plaintiffs provided the funds to Defendant.

70. Accordingly, Defendant has been unjustly enriched and should pay as restitution a prorated portion of the funds for the Spring 2020 semester that Plaintiffs and the proposed Class paid for tuition, required fees, and meal plan fees.

## COUNT III

### Conversion

71. Plaintiffs repeat and re-allege the allegations in Paragraphs 1-70, above, as if fully alleged herein.

72. Plaintiffs brings this claim on behalf of himself and on behalf of the Class.

73. Plaintiffs and the other members of the Class have a right to the in-person educational and extra-curricular services that they were supposed to be provided in exchange for their payments to Defendant.

74. Defendant intentionally interfered with the rights of Plaintiffs and the other members of the proposed Class when it retained fees intended to pay for on-campus classes, facilities and activities, while moving all classes to an online, remote learning format and discontinuing services and access to facilities for which Plaintiffs and the members of the proposed Class had paid.

75. Defendant deprived Plaintiffs and the other members of the Class of their fees or of the right to the services for which their fees were intended to be used.

76. Class members demanded the return of the prorated, unused fees for the remainder of the Spring 2020 semester.

77. Defendant's retention of the fees paid by Plaintiffs and the other members of the Class without providing the services for which they paid deprived Plaintiffs and the other members of the Class of the benefits for which the fees were paid. This interference with the services for which Plaintiffs and the other members of the Class paid damaged Plaintiffs and the other members of the Class in that they paid fees for services that were not and will not be provided.

78. Plaintiffs and the other members of the Class are entitled to the return of prorated unused portion of the fees paid, through the end of the Spring 2020 semester

## PRAYER FOR RELIEF

79. Plaintiffs, on behalf of themselves and on behalf of the members of the Class, respectfully requests that the Court enter judgment in their favor and against Defendant as follows:

    a. Certifying the Class as requested herein, designating Plaintiffs as Class representatives, and appointing the undersigned counsel as Class Counsel;

    b. Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

    c. Declaring that Defendant wrongfully kept the monies paid by the Class;

    d. Awarding injunctive relief and restitution as permitted by law or equity;

    e. Awarding Plaintiffs' reasonable attorneys' fees, costs, and expenses;

    f. Awarding pre- and post-judgment interest on any amounts awarded; and

    g. Awarding such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure on all causes of action so triable.

| | |
|---|---|
| Dated: May 28, 2020 | By:   */s/ Daniel J. Walker*<br>Daniel J. Walker (Bar No. 219439)<br>BERGER MONTAGUE PC<br>2001 Pennsylvania Avenue, NW<br>Suite 300<br>Washington, DC 20006<br>Tel: (202) 559-9745<br>Email: dwalker@bm.net<br><br>Shanon J. Carson\*<br>Glen L. Abramson\*<br>BERGER MONTAGUE PC<br>1818 Market Street, Suite 3600<br>Philadelphia, PA 19103<br>Tel: (215) 875-3000<br>Email: scarson@bm.net<br>Email:  gabramson@bm.net<br><br>E. Michelle Drake\*<br>BERGER MONTAGUE PC<br>43 SE Main Street, Suite 505<br>Minneapolis, MN 55414<br>Telephone: (612) 594-5999<br>Email: emdrake@bm.net<br><br>*Attorneys for Plaintiffs and the Class*<br><br>\**pro hac vice* forthcoming |